Henry Kurtz, Appellant v. Adam Hoke and Henry Hoke.

*Ways—Uninclosed woodland—Prescription—Continuity of user—Act of April 25, 1850.*

Prior to the act of April 25, 1850, sec. 21, P. L. 572, which declared that no prescriptive right to a road through uninclosed woodland should thereafter be acquired, a person could acquire by continuous use for twenty-one years a right to a way through uninclosed woodland, and mere

immaterial changes in the roadbed caused by washing of rains and time did not interrupt the continuity of the use, if the road substantially remained the same road.

Since the act of April 25, 1850, declaring that no prescriptive right to a road through uninclosed woodland should thereafter be acquired, a right by continuous use for twenty-one years of a way over arable land does not draw with it a right of way over the uninclosed woodland belonging to the owner of the arable land and adjoining such land.

*Practice, Supreme Court—Record—Answer to points.*

Where on an appeal to the Supreme Court, the record shows a point and an answer thereto reduced to writing by the lower court, and the point and answer are assigned as error, the point and answer will be considered a part of the record, although the reporter's notes and the statement of the court below on a motion for a new trial indicate that the point was not read to the jury, and the instruction embodied in it was shown by the record not to have been given to the jury in the general charge.

Argued Feb. 21, 1895. Appeal, No. 228, Jan. T., 1895, by plaintiff, from judgment of C. P. Lebanon Co., on verdict for defendants. Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Reversed.

Trespass for cutting down a fence across a lane. Before MEILY, P. J.

The facts appear by the charge of the court below, and the opinion of the Supreme Court.

The court charged as follows:

The action is an action of trespass to recover the sum of one dollar, as claimed by the plaintiff upon the stand, against the defendants, who cut down a gate or a fence across the lane which the plaintiff claims is upon his land, and which, as he alleges, the defendants had expressly agreed to maintain—that is, to maintain the lane at that point and to maintain the gate there, and upon the portion that he got from Bleistein says that they were to pay twenty-five cents a year, or keep it clear of briers.

Now if the contention of the plaintiff is correct, that is, if you believe the testimony given by Mr. Kurtz himself and by Mr. Bleistein—if you should believe upon the consideration of all the testimony that their theory is correct, then the plaintiff would be entitled to recover. [But the defendants deny that state of facts, and contend that they had a prescriptive right of

way over certain portions of this land held by Bleistein and Kurtz, and that in consideration of giving up that prescriptive right of way, they gave them (the defendants) this straight portion from their house and barn out to the Lancaster road.] [1]

[Now the further question will be, if you believe the defendants, whether that prescriptive right of way was acquired over uninclosed woodland, or inclosed woodland, if they had the prescriptive right of way.] [2]

Now there is a difference between the two. Prior to the act of 1850, a continuance of uninterrupted enjoyment of a way across uninclosed woodland for a period of over twenty-one years was presumptive evidence of a grant; that is to say, an uninterrupted user for twenty-one years is the same as if a deed were held for it, but such way over uninclosed woodland must be affirmatively proved. You must be satisfied that such a right exists —did exist for twenty-one years prior to the act of 1850 continuously and uninterruptedly, and further, you must be satisfied that it was substantially the same road from one end to the other; that is, you cannot establish a road with a variance of ten or twenty feet, or running anywhere over the timber land. It must be substantially the same road. It does not need to be precisely the same road, that is, confined to the same limits, but it must be practically the same road. In the course of time it would of course change imperceptibly and from time to time, by reason, you might say, of the weather or of other causes, but if it has retained substantially the same character, if it has not lost its identity as the same road substantially, that would be sufficient, and if that is established to your satisfaction, then of course a prescriptive right has been acquired to that way.

[But if you should find that it was not uninclosed woodland, then it would only take twenty-one years of continuous adverse user to acquire that right.] [3]   [If you believe that the defendants then gave up that prescriptive right of way in exchange for this portion of the lane that is now in dispute as I have stated, they would be entitled to a verdict.] [4]   This is simply a question of fact for you to decide, as to which of the parties is correct. If you decide that the defendants expressly agreed with these parties, Bleistein and Kurtz, to keep

up this lane and maintain a gate and pay twenty-five cents a year or keep it clear of briers, that of course would be an express contract, and regardless of anything else a man must be bound by his express contract.   [But the defendants deny that; they deny the entire contention of the plaintiff, and affirm that they had rights there which they gave up in consideration of getting this lane.] [5]

Now you must weigh the testimony.   There is considerable testimony upon these points and it varies greatly, and that is because it covers a great many years.   As a man grows older, of course his recollection fails like everything else.

If you find that the plaintiff has established his case, if you believe his witnesses, then of course he is entitled to recover. If you believe the contention of the defendants here, why then they are entitled to your verdict in their favor.   We will have to leave the case with you.

Defendants' points were as follows:

1. That the act of April 25, 1850, as to the right of way by user through uninclosed woodland does not apply to this case if the jury believe that this woodland was and had been inclosed, during a period of eighteen years or more as testified to by Henry Kurtz and others, leaving an opening of about forty yards at the one corner thereof, and if the jury believe this fact that then their verdict must be for the defendants. *Answer:* Affirmed. [6]

2. If the jury believe that the way of Henry Hoke through the lane of Kurtz had been used by Hoke for a period of twenty-one years uninterruptedly, the greater part of which was through inclosed farm land, the terminals of said way being the same for the said period of time, then the jury must find for the defendants. *Answer:* Affirmed. [7]

3. If the jury believe that John Bleistein, the predecessor in title to this plaintiff of the land upon which the trespass was committed, did, in exchange of Henry Hoke's right to go over his land to the plank road, grant him a right of way from his house to the lane of plaintiff, then the verdict must be for defendants. *Answer:* Affirmed. [8]

4. The act of 1850 does not apply to user of a way over any other than uninclosed woodland, and if the jury believe that the greater or a large part of this way passed through arable

land through an open lane fenced on each side, for more than twenty-one years prior to the destruction or removal of the cross fence by defendants, then the prescriptive right over that part draws with it the right of way through plaintiff's .woodland inclosed or uninclosed, and the plaintiff cannot recover. *Answer :* Affirmed. [9]

Verdict and judgment for defendants.   Plaintiff appealed.

*Errors assigned* were (1–9) above instructions, quoting them.

*Luther F. Houck,* for appellant.—The evidence in this case conclusively shows that this woodland was uninclosed up to the year 1882.   In the court below the plaintiff contended that if the defendant cut down the plaintiff's fence at a point which was not on the road, as used by the defendants and those under whom they claim, for twenty-one years continuously, prior to April 25, 1850, then the defendants are trespassers and must answer in damages to the plaintiff : Brake v. Crider, 107 Pa. 210 ; Okeson v. Patterson, 29 Pa. 22.

We contend here that the minds of the jury were misled from fairly considering this proposition by other questions submitted to them on which there was no evidence to justify such a submission.

In the charge to the jury as specified in the 2d and 3d exceptions, the court erred in submitting to the jury the question of inclosed or uninclosed woodland, without any evidence to support the theory that it was inclosed woodland : Selser v. Roberts, 105 Pa. 242 ; Ulrich v. Arnold, 120 Pa. 170.

If the road is rambling, sometimes along one line and sometimes along another, it is inadequate evidence of a grant: Arnold v. Cornman, 50 Pa. 361.

The affirmance of defendants' fourth point embraced in the ninth exception must surely be error.   In this point it is claimed that the prescriptive right over the arable land of the plaintiff through an open lane, draws with it the right of way through plaintiff's woodland inclosed or uninclosed.   This proposition is in direct opposition to the act of 1850, so far as the uninclosed woodland of plaintiff is concerned.   No authority in support of such a proposition was submitted to the court below.

The owner of a prescriptive right over arable land must, since the act of 1850 (if he had no right before), obtain a right of way by grant, or by proceedings in the quarter sessions under the road laws, over the intermediate uninclosed woodland, between the point where his right over the arable land stops and a point where his right over arable land again begins: Herschberger v. Kachel, 1 Woodward's Decisions, 488.

*W. M. Derr*, for appellees.—Where particular instructions on a given point are not asked for, the court will be reviewed upon the general effect of the charge, and not upon sentences or paragraphs selected from it; if as a whole the charge was calculated to mislead, there is error in the record, if not, there is none : Reeves v. Del., Lack. & W. R. R., 30 Pa. 454; Lehigh Valley R. R. v. Brandtmaier, 113 Pa. 610; Carothers v. Dunning, 3 S. & R. 373.

The act of 1850 was intended to protect those owners only who had not fenced any part of their woodland but left it open on all sides : Hall's App., 112 Pa. 42.

The easement was apparent and continuous, and Kurtz took subject to it although not mentioned in the condition or deed : Overdeer's Admrs. v. Updegraff, 69 Pa. 110.

OPINION BY MR. JUSTICE DEAN, January 6, 1896 :

The plaintiff is the owner of a tract of land lying between the Lancaster road and Cornwall pike; there are about twenty-three acres in the tract; when he entered into possession of his land in 1855, only three to five acres were then cleared, the remainder being woodland; a lane connecting with the Lancaster road on the northwest extended for about one hundred yards, through the improved part, in a southeasterly direction, and then over the woodland of plaintiff, Bleistein and Smith, to a connection with the Cornwall pike. The testimony showed that the roadbed through the woodland had not been permanent, but changed as the land was cleared, keeping, however, all the time in the woods. Henry Hoke, one of the defendants, the other being his son, was the owner of a small tract adjoining this woodland, and of which he went into possession in 1861; his ingress and egress were over this road, through the woodland and lane, and such had been the case as to the other occu-

pants who preceded him; the whole period of the use of the road covering about seventy-five years, that is, of a road running in that general direction, but the evidence seemed to show the roadbed had changed to conform to the clearing of the land. There was also some evidence on part of plaintiff, that in 1882 there had been an agreement between Bleistein, plaintiff's predecessor in title to part of the land, and defendant, by which the latter was granted voluntarily by Bleistein the right to use a lane running through the land; defendant to pay twenty-five cents a year for such use, keep the lane free from briers, and maintain gates. This agreement defendant denied. Plaintiff, alleging defendant neglected to perform his agreement, closed the lane by a fence, which defendant cut down, and thereupon plaintiff brought suit for damages. There was a judgment for defendants, and plaintiff appeals.

The court instructed the jury:—1. That if such agreement had been made, and defendant had failed in performance on his part, plaintiff was entitled to recover. 2. That if prior to the act of 1850, which declared that no prescriptive right to a road through uninclosed woodland should thereafter be acquired, defendant had, by prescription, acquired an easement to the road through the woodland, and there was no abandonment after the act of 1850, the plaintiff could not recover. 3. That immaterial changes in the roadbed would not interrupt the continuity of the use, if it substantially remained the same road; that imperceptible changes caused by washing of rains, and time, if the identity of the road remained, would not affect the acquisition of the prescriptive right. 4. That if defendant had surrendered a prescriptive right of way over the old road in consideration of a right of way through the lane, then plaintiff could not recover.

There was evidence bearing on each of these points, somewhat conflicting, but still evidence for the consideration of the jury, and we fail to see any error in the submission. It is true, as argued by appellant, that if the way once used had been abandoned or shifted, or if it was rambling sometimes along one line, and sometimes along another, as is held in Brake v. Crider, 107 Pa. 212, and Arnold v. Cornman, 50 Pa. 361, no prescriptive right was acquired; but the evidence warranted the instruction, and the court kept within the line laid down by

these authorities, when it said to the jury: " You must be satisfied that such a right exists—did exist for twenty-one years prior to the act of 1850, continuously and uninterruptedly, and further, you must be satisfied that it was substantially the same road from one end to the other; that is, you cannot establish a road with a variance of ten or twenty feet, or running anywhere over the timber land. It must be substantially the same road." We see no error in this instruction under the cases cited. The wagon track on all roads, to some extent, changes by time ; in public roads, the thirty-three feet generally appropriated is within the public right of use ; the track, by reason of washing or other causes, by consent of the traveling public who use it, changes a few feet, sometimes to one side of the thirty-three feet and sometimes to the other, but the road remains substantially the same. Such a change in a roadbed acquired by prescription would not destroy the right.

But the affirmance of defendants' fourth point, apparently, was manifest error. The act of April 25, 1850, declares : " That no right of way shall hereafter be acquired by user, when such way passes through uninclosed woodland ; but on clearing such woodland, the owner thereof shall be at liberty to inclose the same as if no such way had been used through the same before such clearing or inclosure."

There was evidence that the way through the wood had been used for twenty-one years after 1850 ; as to its use before that time, it was, on account of fading recollection of witnesses, less clear ; after 1850, no prescriptive right could be established by mere user through uninclosed woodland ; but at one end the way was by, and had always been by a short lane through improved land. Therefore defendant put this point to the court :

" 4. The act of 1850 does not apply to user of a way, over any other than uninclosed woodland, and if the jury believe, that a greater or a large part of the way passed through arable land through an open lane fenced on each side, for more than twenty-one years prior to the destruction or removal of the cross fence by defendants, then the prescriptive right over that part draws with it the right of way through plaintiff's woodland inclosed or uninclosed, and the plaintiff cannot recover."

This the court affirmed, and plaintiff excepted. Such is the record as brought up to us; the written point and affirmation.

True, the reporter's notes and the statement of the court on the motion for a new trial, indicate that the point was not read to the jury; nor was the instruction embodied in it given to the jury in the general charge, but we must take the record as if made up under the act of assembly. The act of March 24, 1877, directs that when counsel shall request the court in writing to charge upon any particular point of law, the judge shall reduce the answer to the point to writing, which said point and answer thereto shall be immediately filed and become part of the record for purposes of error, and shall be considered part of the record for assignment of error. This record was made up in exact accord with this legislative mandate, and we must treat it as the record.

To affirm the point, as we have already stated, was error. It in effect nullifies the act of 1850. Every road through woodland necessarily runs into roads or ways on improved land; it extends from a habitation or improvement of the user, to the common highway, village or town. To hold, that because it runs for any distance through improved land, therefore it draws with it the right through uninclosed woodland, leaves the act of 1850 nothing, in the vast majority of cases, to operate on. The act is so plain, that it admits of but one meaning, viz : that a right by prescription to a road through uninclosed woodland cannot be obtained. The answer to this point is the single error apparent upon this record, and for that the judgment must be reversed.

Judgment reversed, and v. f. d. n. awarded.