IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Petition for Appointment of :
Board of Viewers for Purpose of :
Closing Township Road 444 and/or :
Compensating Wyoming Land :
Conservancy, Inc. for the Unlawful :
Taking of its Property Situate in :
Windham Township, Wyoming :
County, Pennsylvania :
                                       :
Appeal of: Wyoming Land           : No. 2025 C.D. 2015
Conservancy, Inc.                 : Argued: September 15, 2016


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE JOSEPH M. COSGROVE, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge


OPINION BY
SENIOR JUDGE PELLEGRINI                 FILED: November 15, 2016


Wyoming Land Conservancy, Inc. (WLCI), a for-profit company, appeals from an order of the Court of Common Pleas of the 44th Judicial District, Wyoming County Branch (trial court), sustaining the preliminary objections filed by Windham Township (Township) in response to WLCI's amended petition for the appointment of a board of viewers for the purpose of vacating a portion of Cemetery Road or, in the alternative, compensating WLCI for the unlawful taking of its property. For the reasons that follow, we affirm.

**I.**

WLCI is the record owner of certain parcels of property located in Windham Township, Wyoming County, Pennsylvania (Property). A portion of Township Road No. 444, more commonly referred to as Cemetery Road, runs through WLCI's Property. Cemetery Road begins at Township Road 443, also known as Scottsville Road, proceeds in a southwesterly direction for 2.62 miles, and terminates at an intersection with State Route 4002. Cemetery Road is an unpaved road which passes through WLCI's Property for a length of 0.93 miles, with WLCI's Property abutting the road on either side.

WLCI filed its initial petition in the trial court on April 23, 2014. An amended petition (Petition) was filed on July 7, 2014, alleging that the Township condemned WLCI's private property without just compensation and without the benefit of lawful proceedings. The Petition seeks a hearing to determine whether a condemnation of the Property has occurred, the appointment of a board of viewers pursuant to Section 502(c) of the Eminent Domain Code, 26 Pa.C.S. § 502(c), to view the Property for the purpose of closing off and vacating the portion of Cemetery Road that falls within WLCI's Property, and an award of just compensation for the taking of the Property. WLCI did not join other individuals who owned and occupied property along the portion of Cemetery Road it was seeking to close to public access.

The Township responded by filing preliminary objections pursuant to Section 504(d) of the Eminent Domain Code[1] asserting that Cemetery Road has

---

[1] 26 Pa.C.S. § 504(d). Section 504(d) provides, in pertinent part:
**(Footnote continued on next page…)**

existed on WLCI's Property for at least 145 years as reflected in numerous historic maps and the Petition is barred by the statute of limitations and laches; the Township has maintained Cemetery Road for a period in excess of 21 years and, therefore, is entitled to continue the use of the road pursuant to Section 2307 of the Second Class Township Code;[2] and the Township is entitled to a prescriptive easement because Cemetery Road has been used by and open to the public in its current location in excess of 21 years.

---

**(continued…)**

> **(d) Preliminary Objections.—**
>
> (1) Any objection to the appointment of viewers may be raised by preliminary objections filed within 30 days after receipt of notice of the appointment of viewers.
>
> (2) Objections to the form of the petition or the appointment or the qualifications of the viewers in any proceeding or to the legal sufficiency or factual basis of a petition filed under section 502(c) (relating to petition for appointment of viewers) are waived unless included in preliminary objections.

*Id.* "Preliminary objections are the exclusive method under the Eminent Domain Code of raising legal and factual objections to a petition for appointment of viewers which alleges a *de facto* taking" or compensable injury. *German v. City of Philadelphia*, 683 A.2d 323, 325 n.5 (Pa. Cmwlth. 1996) (citing *Holmes Protection of Pittsburgh, Inc. v. Port Authority of Allegheny County*, 495 A.2d 630 (Pa. Cmwlth. 1985), *appeal denied*, 613 A.2d 562 (Pa. 1992)).

[2] Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§ 67307.  Section 2307(a) provides, in pertinent part, that "[e]very road which has been used for public travel and maintained and kept in repair by the township for a period of at least twenty-one years is a public road having a right-of-way of thirty-three feet even though there is no public record of the laying out or dedication for public use of the road."  53 P.S. § 67307(a).

Following an evidentiary hearing, the trial court issued an order on September 11, 2015, finding that Cemetery Road in its current configuration is a public road. Therefore, the trial court sustained the Township's preliminary objections and dismissed WLCI's Petition, with prejudice.[3] WLCI appealed[4] and in its 1925(a) opinion, the trial court clarified that the "Township has proven a prescriptive easement with clear and positive evidence." (Reproduced Record (R.R.) at 13).

## II.

On appeal, WLCI argues for the first time that the Township is statutorily foreclosed from acquiring an easement by prescription in Cemetery Road pursuant to Section 21 of the Act of 1850 (Act)[5] because the Property is unenclosed woodlands. This provision of the Act states:

> No right of way shall be hereafter acquired by user, where such way passes through unenclosed [sic] woodland; but on clearing such woodland, the owner or owners thereof shall be at liberty to enclose the same, as if no such way had been used through the same before such clearing or enclosure.

---

[3] The trial court also vacated the prior orders of October 20, 2008, and April 23, 2014, in an ancillary matter filed by WLCI, which had appointed a board of viewers for the Property.

[4] Our scope of review is limited to determining whether the trial court committed an error of law and whether findings are supported by competent evidence. *German*, 683 A.2d at 326.

[5] Act of April 25, 1850, P.L. 569, *repealed and reenacted and amended by* the Act of July 1, 1981, P.L. 198, 68 P.S. § 411.

4

68 P.S. § 411. This statute applies equally to private and public prescriptive easements, *Sprankle v. Burns*, 675 A.2d 1287, 1289 (Pa. Super. 1996) (citing *Brake v. Crider*, 107 Pa. 210 (1884)), and "the character of the land itself, is determinative of the application of the Act of 1850." *Humberston v. Humbert*, 407 A.2d 31, 32 (Pa. Super. 1979). Our Supreme Court has held that "the act [of 1850] . . . admits of but one meaning, viz. that a right by prescription to a road through unenclosed woodland cannot be obtained." *Minteer v. Wolfe*, 446 A.2d 316, 320-21 (Pa. Super. 1982) (quoting *Kurtz v. Hoke*, 33 A. 549, 550 (Pa. 1896)).

There are several reasons that the "unenclosed woodlands" argument is unavailable or applicable. First as the Township correctly points out the purported issue of whether the road went through "unenclosed woodlands" was not mentioned at any point during the proceedings before the trial court. WLCI is not permitted now to raise the issue for the first time on appeal. *See Burkett v. Smyder*, 535 A.2d 671, 673-74 (Pa. Super. 1988) ("Clearly, the applicability of 68 P.S. § 411 is a defense that should have been advanced during the pre-trial stage of this case. By failing to raise the defense at the appropriate phase, Appellants have effectively waived it for appellate consideration.") (Citation omitted). Moreover, the issue is waived because WLCI also failed to raise the issue in its 1925(b) statement. *See Commonwealth v. Hill*, 16 A.3d 484, 494 (Pa. 2011) (holding "any issues not raised in a Rule 1925(b) statement will be deemed waived"); *Lang v. Department of Transportation*, 13 A.3d 1043, 1049 (Pa. Cmwlth. 2011).

Second, even if it had been raised and not waived, the "unenclosed woodlands" defense is not available because it is inconsistent with the remedies

5

sought. WCLI filed a Petition both to vacate the road and, in the alternative, for the appointment of viewers to be awarded damages for the taking. In seeking to vacate the road, that remedy presumes that the road in question is already a public road. 53 P.S. § 67307 only prohibits the acquiring of a prescriptive easement through "unenclosed woodlands;" it does not have any application where a public road already exists. As to that portion of WCLI's Petition alleging a *de facto* taking by seeking the appointment of viewers so that it can be paid for the taking of the road by the Township, once that Petition is filed, you admit the Township has already taken the road and the only question is how much you should be paid for the taking.

Finally, even if it was not waived and was not inconsistent with the remedies WLCI sought, and if one can get their "head around" the raising of a defense to one's own Petition, the "unenclosed woodlands" defense against someone claiming a public or private prescriptive easement, as an affirmative defense, was WLCI's burden to establish that the road was unenclosed woodlands. Understandably, because the defense was not raised and it was inconsistent with the remedies it sought, WLCI did not seek to or meet its burden regarding whether WLCI's property constitutes woodlands for the purposes of the Act of 1850 or whether the Property is enclosed or unenclosed earlier than the time period that the Township claimed it was a public road.

## III.

WLCI also argues that the record does not support the trial court's finding of sufficient public use upon which to grant a prescriptive easement.

6

According to WLCI, the evidence submitted by the Township does not show that Cemetery Road was used by the general public uniformly, adversely and continuously for the statutorily-prescribed period of time. We disagree.

"In order to merit a declaration that a road is public by means of common law prescription, one must show that the public used the road uniformly, adversely and continuously under a claim of right for 21 years." *Morgan v. Richter*, 724 A.2d 983, 987 (Pa. Cmwlth. 1999) (citing *Stewart v. Watkins*, 235 A.2d 604 (Pa. 1967)). Although public use does not mean use by every member of the community, it is not made out by use of a road merely by those having business with the establishments to which the road provides access. *Southeastern Pennsylvania Transportation Authority (SEPTA) v. Pennsylvania Public Utility Commission*, 505 A.2d 1046, 1049 (Pa. Cmwlth. 1986). Moreover, "[t]he use must be by the public in general, as against a limited segment of the public." *Id.* (citation omitted). "[T]he evidence need not show a constant use in order to establish continuity; rather, continuity is established if the evidence shows a settled course of conduct indicating an attitude of mind on the part of the user or users that the use is the exercise of a property right." *Minteer*, 446 A.2d at 319 (quoting *Keefer v. Jones*, 359 A.2d 735, 737 (Pa. 1976)).

In this case, Robert Doble (Doble) testified as an expert in civil engineering. Doble conducted an evaluation of the road condition of Cemetery Road and reviewed the following maps and surveys depicting Cemetery Road: an 1869 historic map which hangs in the Wyoming County Courthouse; a 1912 map of Windham Township; maps from the Pennsylvania Department of Transportation

(PennDOT) dated from 1937 and 2012; and a survey prepared by Milnes Engineering. Doble testified that the 2012 PennDOT map depicted Cemetery Road in a virtually identical manner as the 1869 map and, therefore, he opined that the roads were the same. In addition, Doble testified that he viewed corrugated metal pipes on Cemetery Road that were deteriorating, leading him to opine that the pipes had been on the road for more than 21 years.

Chris Donahue (Donahue) testified that he has utilized Cemetery Road for various purposes since moving to the area 54 years ago, and that he witnessed his father, a Township supervisor, repairing and maintaining the roadway. Donahue witnessed the Pennsylvania State Police utilize Cemetery Road to patrol within the Township. Donahue never asked WLCI for permission to utilize Cemetery Road.

Reynold Wilson, Jr. (Wilson) owns property on Cemetery Road and is the President of the Cemetery Road Hunting Club, which owns property abutting that owned by WLCI. Wilson testified that he has been going to his land and the hunting club for more than 21 years, he has utilized Cemetery Road for moving farm equipment, and has witnessed others utilize the road for horseback riding.

Michael Stabinsky (Stabinsky), a Township supervisor and former trooper with the Pennsylvania State Police, testified that he patrolled Cemetery Road from the 1980s through the early 2000s. He testified that he regularly travels the road and that the Township has always maintained the roadway. As Township

8

supervisor, Stabinsky and the roadmaster conferred to plan and execute road maintenance on Cemetery Road.

Gloria Milliron (Milliron), the Township's secretary and treasurer since 1972, testified that she is involved with Township roads as it pertains to budgeting, keeping minutes as to what roads will be repaired, and occasionally riding Township roads for inspections. The Township receives allocated funds for PennDOT-approved roads once a year and such allocation often requires that PennDOT inspect the roads. Milliron testified that Cemetery Road has been included in this allocation from PennDOT since the 1930s. Milliron herself has utilized Cemetery Road since 1961, has never seen it closed to public use, and testified that the location of the road has not changed.

Finally, Jason Vandermark, a Township supervisor and roadmaster whose responsibilities include overseeing maintenance of the roads, testified that the Township conducts winter maintenance on Cemetery Road, has graded the road, completed brush cutting and filled potholes, and completed all other normal road maintenance on Cemetery Road.

We agree with the trial court that the Township presented clear and positive evidence of public use of Cemetery Road to warrant the declaration of a prescriptive easement. It is well-settled that day-to-day use is not required to satisfy the elements necessary for creation of a prescriptive easement. *Minteer*, 446 A.2d at 321 (citing *Adshead v. Sprung*, 375 A.2d 83, 85 (Pa. Super. 1977)). The Township's five witnesses were not all individuals owning property or having

business along Cemetery Road, but were representative of the broader population. The record demonstrates a settled course of conduct among the Township's representative witnesses that their use of Cemetery Road was the exercise of a property right. The witnesses described more than an occasional trespass, and the public use they testified to was substantial rather than casual. *See SEPTA*, 505 A.2d at 1049 (citations omitted). Therefore, the trial court's finding of sufficient public use to warrant a prescriptive easement is supported by competent evidence.

Accordingly, the order of the trial court is affirmed.

_____
DAN PELLEGRINI, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Petition for Appointment of :
Board of Viewers for Purpose of :
Closing Township Road 444 and/or :
Compensating Wyoming Land :
Conservancy, Inc. for the Unlawful :
Taking of its Property Situate in :
Windham Township, Wyoming :
County, Pennsylvania :
                                   :
Appeal of: Wyoming Land           :
Conservancy, Inc.                 : No. 2025 C.D. 2015

# **O R D E R**


AND NOW, this 15<u>th</u> day of <u>November</u>, 2016, it is ordered that the order of the Court of Common Pleas of the 44<u>th</u> Judicial District, Wyoming County Branch in the above-captioned matter dated September 11, 2015, is hereby affirmed.


_____
DAN PELLEGRINI, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Petition for Appointment of  :
Board of Viewers for Purpose of  :
Closing Township Road 444 and/or  :
Compensating Wyoming Land  :
Conservancy, Inc. for the Unlawful  :
Taking of its Property Situate in  :
Windham Township, Wyoming  :
County, Pennsylvania  :
  :
Appeal of: Wyoming Land  :  No. 2025 C.D. 2015
Conservancy, Inc.  :  Argued: September 15, 2016


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE JOSEPH M. COSGROVE, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge


DISSENTING OPINION BY
JUDGE McCULLOUGH                              FILED: November 15, 2016


I respectfully dissent because I do not believe that Windham Township (Township) can acquire a right of way which is *per se* prohibited by law.

First, I disagree with the Majority that the Act of 1850[1] does not have any application where a public road already exists.[2] The Pennsylvania Supreme Court in *Kurtz v. Hoke*, 33 A. 549, 550 (Pa. 1896), held that the existence of a

---

[1] Act of April 25, 1850, P.L. 569, *repealed and reenacted and amended by* the Act of July 1, 1981, P.L. 198, 68 P.S. §411.

[2] We note that the Majority references section 2307 of the Second Class Township Code, 53 P.S. §67307, in its discussion of this issue. However, it seems evident that the Majority is referencing the Act of 1850.

public road does not foreclose a challenge to a purported easement by prescription. Similarly, here, Wyoming Land Conservancy, Inc. (WLCI) should not be precluded from challenging the Township's authority to utilize Cemetery Road as a public right of way, especially where a statute explicitly precludes such action by the Township.

More importantly, as the Majority notes, section 21 of the Act of 1850 provides that:

> No right of way shall be hereafter acquired by user, where such way passes through unenclosed woodland; but on clearing such woodland, the owner or owners thereof shall be at liberty to enclose the same, as if no such way had been used through the same before such clearing or enclosure.

68 P.S. §411. The Township asserted in its preliminary objections, filed in 2014, that Cemetery Road existed on the property of WLCI for at least 145 years. Even accepting this assertion as true, the existence of Cemetery Road can only be established as far back as 1869, while the Act pre-dates said existence by approximately nineteen years. The Act explicitly precludes any user from acquiring a right of way where the same passes through unenclosed woodland. Contrary to the Majority, the Act does not only prohibit the acquiring of a "prescriptive easement," it *prohibits a user from acquiring any right of way*. (Slip op. at 6.)

The Courts of this Commonwealth, in interpreting the Act, have consistently held that a prescriptive easement may not be acquired through unenclosed woodland. *See Kurtz*; *Tomlinson v. Jones*, 557 A.2d 1103, 1105 (Pa. Super. 1989); *Humberston v. Humbert*, 407 A.2d 31, 32 (Pa. Super. 1979); *Trexler v. Lutz*, 118 A.2d 210, 211 (Pa. Super. 1955). Indeed, in *Kurtz*, our Supreme Court

found that the common pleas court erred in instructing a jury that a roadway which traversed through the plaintiff's unenclosed woodland for more than twenty-one years could give rise to a right-of-way by prescription, holding that the unenclosed woodland statute was "so plain, that it admits of but one meaning, viz: that a right by prescription to a road through uninclosed [sic] woodland cannot be obtained." *Kurtz*, 33 A. at 550.

Our Supreme Court's decision in *Martin v. Sun Pipe Line Co.*, 666 A.2d 637 (Pa. 1995), while procedurally distinguishable, is also instructive. In that case, a landowner in 1930 had granted an easement to Susquehanna Pipe Line Company (a predecessor in interest to Sun Pipe Line Co.) for the purpose of laying and maintaining a petroleum pipeline across his property. A controversy arose on two separate occasions when Sun Pipe Line Co. entered the property without the knowledge of the current owners, Raymond and Joan Martin, and expanded the width of the easement. While the Martins alleged no knowledge of the pipeline, which was underground, Sun Pipe Line Co. asserted that it had maintained a continuous program of maintenance and repair since the inception of the easement in 1930.

In 1991, the Martins filed suit alleging that Sun Pipe Line Co.'s right of way terminated upon the death of the original landowner/grantor. Following pleadings, the Martins filed a motion for summary judgment claiming that they were the sole owners of the property and that Sun Pipe Line Co. was statutorily barred from asserting any right or interest in the property pursuant to section 21 of the Act.[3] Sun Pipe Line Co. filed a cross-motion for summary judgment asserting,

---

[3] In the present case, WLCI filed a petition for appointment of a board of viewers for the purpose of vacating a portion of Cemetery Road or, alternatively, seeking compensation for the unlawful taking of its property. WLCI did not address section 21 of the Act in its pleadings.

*inter alia*, a prescriptive easement over the property.[4]  The common pleas court ultimately granted the Martins' motion and denied Sun Pipe Line Co.'s motion. The Superior Court vacated the order of the common pleas court and remanded for trial on the merits.  However, our Supreme Court reversed and reinstated the order of the common pleas court, holding that the common pleas court properly granted the Martins' motion for summary judgment "*[b]ecause the acquisition of a prescriptive easement through 'unenclosed woodland' is prohibited by statute*." *Id.* at 638 (emphasis added).

Our Supreme Court concluded that *no material issue of fact existed* regarding whether Sun Pipe Line Co. had acquired a prescriptive easement over the property because section 21 of the Act had been consistently interpreted as holding that "*a prescriptive easement may not be acquired through unenclosed woodland*." *Id.* at 640 (emphasis added).  It is clear that our Supreme Court recognizes an absolute prohibition to acquiring a prescriptive easement over unenclosed woodlands.

Nevertheless, the Majority concludes that any assertion regarding the issue of unenclosed woodlands is waived as it was not raised below.  The United States Supreme Court has weighed in heavily on the issue of waiver regarding questions that may be taken up and resolved for the first time on appeal where the

---

The Township filed preliminary objections asserting, *inter alia*, a prescriptive easement, which the trial court sustained.  WLCI first raised an issue regarding section 21 of the Act in its appeal to this Court.

[4] Sun Pipe Line Co. asserted that the Martins had raised the issue of section 21 of the Act outside the scope of permissible pleadings, i.e., as new matter in their reply to Sun Pipe Line Co.'s new matter.  However, the Supreme Court noted that Sun Pipe Line Co. failed to raise an objection at the time of this alleged defect either by preliminary objection, answer, or reply and, thus, any objection was waived.

proper resolution is beyond any doubt, *Turner v. City of Memphis*, 369 U.S. 350 (1962), or where "injustice might otherwise result," *Hormel v. Helvering*, 312 U.S. 552, 557 (1941). *See also Singleton v. Wolf*, 428 U.S. 106 (1976) (reversing decision of Court of Appeals for the Eighth Circuit that addressed the merits when the only issue below was standing of the plaintiffs and holding that injustice was more likely to be caused than avoided by deciding the issue without allowing parties an opportunity to be heard). In *Singleton*, the United States Supreme Court explained the general rule that "a federal appellate court does not consider an issue not passed upon below," as to issues raised for the first time on appeal, but the Court went further to emphasize that:

> The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases. We announce no general rule. **Certainly there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt, see Turner v. City of Memphis, 369 U.S. 350 (1962), or where 'injustice might otherwise result.' Hormel v. Helvering, 312 U.S. [552,] 557** . . . [I]njustice was more likely to be caused than avoided by deciding the issue without petitioner's having had an opportunity to be heard.

*Id.* at 120-21 (emphasis added).[5]

In *Turner*, the Court addressed the constitutionality of certain Tennessee state statutes requiring segregation in restaurants that was not addressed below and held the same to be violative of the Fourteenth Amendment to the United States Constitution. In *Hormel*, the Court affirmed a decision of the Circuit

---

[5] At the very least, similar to the outcome of *Singleton*, a remand may be warranted to the trial court for consideration of the issue of section 21 of the Act.

Court of Appeals for the Eighth Circuit which had reversed a decision of the Board of Tax Appeals and relied on a section of the tax code that was not raised below. The United States Supreme Court in *Hormel* observed that a "reviewing court should pass by, without decision, questions which were not urged before the Board of Tax Appeals," but further reasoned that "[t]here may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below." *Id.* at 556-57. The United States Supreme Court explained that:

> Rules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy. Orderly rules of procedure do not require sacrifice of the rules of fundamental justice.

*Id.*

Here, the concern is that failure to apply a statutory prohibition to a right "which cannot be obtained," *Kurtz*, 33 A. at 550, results in deprivation of a fundamental constitutional right,[6] and a sacrifice of the rules of fundamental justice.

---

[6] Article 1, section 1 of the Pennsylvania Constitution guarantees the right of all men to acquire, possess, and protect property. PA Const. art. 1, §1. This right is further protected by Fifth and Fourteenth Amendments to the United States Constitution. U.S. Const. amends. V, XIV. The Fifth Amendment provides that no person shall be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation. The Fourteenth Amendment makes these protections applicable to the states.

For these reasons, I would reverse the order of the Court of Common Pleas of the 44th Judicial District, Wyoming County Branch and remand to allow evidence on the matter consistent with this opinion.

_____
PATRICIA A. McCULLOUGH, Judge